(95 Misc. Rep. 315)

HALL v. DAVIS et al.

(Supreme Court. Trial Term, Niagara County.)

1. TAXATION ☞533. New, vol. 11 Key-No. Series—SALE OF STOCK—FAILURE TO PAY TRANSFER TAX—EFFECT.

Tax Law (Consol. Laws, c. 60) §§ 270–279, requiring stamps to be affixed to stock certificates upon their sale, and section 278, providing that no transfer on which a tax is imposed, and which tax is not paid at the time of the transfer, shall be made the basis of any action or legal proceeding, and that proof thereof shall not be received, in view of section 272, making any person selling stock without paying the tax guilty of misdemeanor, and section 277, providing that any person violating the statute shall, in addition to the other punishment, forfeit a certain sum for each violation, were intended to deny to one violating its provisions the right to enforce a contract which he, by his own inadvertence or wrong, has made unenforceable; but evidence as to whether a transfer of stock certificates, to which the required stamps were not affixed, was a pledge or a sale, was admissible.

2. TAXATION ☞533. New, vol. 11 Key-No. Series—SALE OF STOCK—TRANSFER TAX—VIOLATION OF LAW—ESTOPPEL.

Where a transfer of stock certificates to which no stamps were affixed, as required in case of a sale, was in fact a sale, the seller, guilty of an omission of duty, could not be permitted to profit thereby to the detriment of the buyer by the exclusion of evidence that the transfer was a sale.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. TAXATION �ején583, New, vol. 11 Key-No. Series—SALE OF STOCK—TRANS-
   FER TAX—FAILURE TO AFFIX STAMPS—EFFECT.
      The seller's failure to affix transfer tax stamps to stock certificates
   upon sale thereof did not render the sale invalid.

4. CORPORATIONS ⟦=⟧121(5)—SALE OF STOCK—SUFFICIENCY OF EVIDENCE.
      Evidence in an action against the executors of the estate of plaintiff's
   brother for conversion of shares of stock belonging to the plaintiff *held*
   to show defendants' ownership on the ground of plaintiff's sale of the
   stock to the testator in his lifetime.
      [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 504; Dec.
   Dig. ⟦=⟧121(5).]

Action by Julia B. Hall against Arthur V. Davis and another, as
executors of the estate of Charles M. Hall, deceased. Complaint dis-
missed.

Charles Hickey, of Lockport, for plaintiff.

Cohn, Chormann & Franchot, of Niagara Falls (Morris Cohn, Jr.,
and Edward E. Franchot, both of Niagara Falls, of counsel), for de-
fendants.

TAYLOR, J. This is an action for $100,000 damages; the plain-
tiff claiming that the defendants have converted to their own use 200
shares of the stock of the Aluminum Company of America belonging
to the plaintiff. The parties have stipulated to try the case before the
court without a jury.

The plaintiff is a sister of the defendants' testator, who died in De-
cember, 1914. Her contention is that on August 1, 1911, she was the
owner of certificates Nos. 460 and 461 of the stock of said company,
and that on that day she borrowed $12,500 from her brother and de-
posited with him certificate No. 460 as collateral security, and that on
February 1, 1912, she borrowed an additional sum of $12,500 from her
brother and deposited with him certificate No. 461 likewise as collat-
eral security. She claims that these loans were canceled and dis-
charged by her brother's last will and testament, and that thereupon
she became entitled to the unconditional return of her stock. Prior
to the commencement of the action, and on September 14, 1915, the
plaintiff demanded of the defendants the return of said certificates,
which was refused. No promissory note or other evidence of indebt-
edness was executed. The certificates indorsed in blank by the plain-
tiff were in her brother's possession at the time of his death. The
dividends were paid to the plaintiff, and by her turned over to her
brother during his lifetime, and afterward to the defendants, until the
month of February, 1915, when the defendants caused the certificates
to be placed in their own names upon the books of the company.

The defendants contend that the transactions of August 1, 1911,
and February 1, 1912, constituted a sale outright of the stock by the
plaintiff to her brother, for which he paid her the full purchase price
of $25,000. All evidence of such sale, or tending to prove a sale, was
objected to by the plaintiff. Inasmuch as the action was tried by the
court without a jury, the evidence was admitted over the objection and

exception of the plaintiff, but subject to being later stricken out, if the court should hold that it was inadmissible.

[1] No stamps, as required by article 12 of the Tax Law (chapter 60, Consolidated Laws), had been affixed to the stock certificates when they were offered in evidence, and no proof was offered that such tax had been paid. If the transaction constituted a pledge of the stock as collateral security for a loan, no stamps were required; but if, on the other hand, the stock was sold outright, as the defendants claim, the omission by the plaintiff to affix the stamps constituted an evasion and violation of. the statute.

The basis of the plaintiff's objection to the admissibility of the testimony tending to prove a sale is section 278 of the Tax Law, which reads as follows:

"*Effect of Failure to Pay Tax.* No transfer of stock made after June 1, 1905, on which a tax is imposed by this article, and which tax is not paid at the time of such transfer, shall be made the basis of any action or legal proceeding, nor shall proof thereof be offered or received in evidence in any court in this state."

The plaintiff contends that this statute could have only one meaning, and that under no circumstances may proof of a sale be offered where the tax has not been paid at the time of transfer. Such a construction, it seems to me, would clearly nullify other important provisions of this law. To illustrate: Section 272 of the act provides that any person who shall make a sale or transfer of stock without paying the tax shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not less than $500 or more than $1,000, etc. Assume a defendant on trial charged with a violation of this section. The stock certificate is produced, on which no stamp appears. The defendant's attorney thereupon objects to any evidence of a sale, upon the ground that a transaction cannot be made the basis of any legal proceedings, and that all evidence of such sale is inadmissible under the statute. The district attorney would, of course, be unable to convict without proof of a sale. It would therefore seem to follow that this important provision of the law providing punishment for the commission of crime would be entirely nullified if such transfer could not under any circumstances be made the basis of a legal proceeding and proof thereof be received in evidence.

The same argument applies to section 277, which provides that any person who shall violate the statute shall, in addition to the other punishment provided, forfeit to the people of the state a civil penalty of $500 for each violation. For how could the state recover the penalty unless it can prove the sale? And how can it prove the sale if the Legislature forbids such proof under section 278? The result of such a construction would be to nullify the entire Stock Transfer Law. The payment of the tax would be generally evaded, because the state had failed to provide effectual means for its enforcement.

It would seem, therefore, that the Legislature did not intend that evidence of a sale should under all circumstances be inadmissible where the tax is not paid. It becomes, then, the duty of the court to construe the law in the light of what the Legislature really intended. Obviously to me the purpose of the section was to deny to an offender who

violates its provisions the right to enforce through the courts a contract which he, by his own inadvertence or wrong, has made unenforceable. Sheridan v. Tucker, 145 App. Div. 147, 129 N. Y. Supp. 18.

If anybody has violated the statute in this case, it is the plaintiff, and not the defendants' testator, for if the transaction was a sale it was the plain duty of the plaintiff, and of no one else, to affix the stamps at the time of the transfer. In no event has the defendants' testator been guilty of any omission of duty. Whether the transaction is to be treated as a pledge or a sale, therefore, the statute was not intended to include it, and the evidence was admissible.

[2] If the transaction was in point of fact a sale, the plaintiff has been guilty of an omission of duty, and of course cannot be permitted to profit by the same to the detriment of the defendants. To me it seems impossible that our Legislature could have intended that in an action like this, wherein a plaintiff claims a pledge and a conversion of stock, this statute was intended to prevent the defendants from pleading and proving that the transaction was really a sale. An interpretation so unfair and inequitable, and so devoid of basic warrant in this aspect of the statute, should not be made by a court unless its necessity be clearly apparent.

[3] The plaintiff insists that, even if the transaction was in point of fact a sale, there would still be no forfeiture; that the defendants could bring an action on the theory that there had been no valid sale and in such action recover back the stock or its value. But the sale is valid, and the failure to affix the stamps did not render it invalid. Bean v. Flint, 204 N. Y. 153, 97 N. E. 490. The plaintiff urges that the defendants could bring an action for money had and received, alleging a total failure of consideration. But the defendant should not be required to adopt a theory which they reject; on the contrary, for the reasons I have given, the defendant should be permitted to contend that the transfer was a sale, that being their view of it.

[4] I hold, therefore, that the evidence of the sale of this stock by the plaintiff to the defendants' testator is properly in the case. That evidence consisted largely, if not principally, of letters written by the plaintiff in which she characterized the transactions as sales. Furthermore, although it is not a matter of prime importance, I feel that the provisions of the will of Charles M. Hall, under which the plaintiff claims that any indebtedness of hers to Charles M. Hall on account of the transaction in question has been canceled, do not assist the plaintiff; for, in addition to the direction in the will that "all indebtedness of any of my relatives to me shall be canceled and discharged," the will specifies indebtedness "evidenced by any notes or other form of indebtedness," and the will further specifically states that the testator does not make "any bequest or devise to my sisters, Edith M. Hall, Julia B. Hall, and Louie A. Hall, for the reason that they are already abundantly provided for," etc.

Therefore, since it further appears to me that the weight of the evidence, instead of being in the plaintiff's favor, is clearly to the effect that the defendants are the true owners of the stock in question, I find that the complaint must be dismissed, with costs.